UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID WAYNE TODD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-550** |
| **TERREBONNE PARISH CONSOLIDATED GOVERNMENT, ET AL.** | **SECTION: "R"(1)** |

### REPORT AND RECOMMENDATION

David Wayne Todd, a state pretrial detainee, filed this federal civil action pursuant to 42 U.S.C. § 1983. Claiming that his serious medical needs were met with deliberate indifference at the Terrebonne Parish Criminal Justice Complex, he sued the Terrebonne Parish Consolidated Government, Richard Neal, and EMT Jacob.[1]

### I. Plaintiff's Allegations

In his complaint, plaintiff alleged:

On or about October 9, 2020, plaintiff scraped his arm. Within a couple of days, he developed a rash on the arm, which he attempted to treat himself with a cream. When his condition did not improve, he began seeking medical assistance during "pill call," but to no avail. Finally, on October 23, he was prescribed Bactrim, an antibiotic. After his condition still did not improve, he was then prescribed a "green pill" and a cream.[2] Because he continued to show no improvement, he was finally examined by the facility physician, Dr. Scott Haydel, on October 29; however, Dr. Haydel only advised plaintiff to clip his nails.

---

[1] Rec. Doc. 4.
[2] Plaintiff alleged that his medical chart reflected that he was allergic to one of the medications (presumably the Bactrim) but he was prescribed the medication anyway.

A few days later, plaintiff noticed that an abscess had developed on his upper back. When he showed an EMT the abscess during "pill call," he was again prescribed the green pill and cream. But, his condition still worsened, and he sought additional assistance. Specifically, he alleged in the complaint:

> The medication nor the cream was helping. **The abscess became bigger and got very painful**. … **It got to the point that I could barely walk and I began to run fever, get chills, was sweating, had chest pains, and started to lose motor functions.** I complained to **EMT Jacob** of my symptoms for **3 days** and **he refused to** provide me with the proper treatment or **do anything at all. I even informed him that I previously had triple bypass heart surgery and the chest pains needed to be checked out. He still refused to do anything to help me**.[3]

Eventually, after he later complained to **different** EMTs on November 18 and 19, plaintiff was taken to the hospital, "where they told [him] if they had waited any longer to bring [him] to the hospital, [he] would have most likely died." He "was told that [his] kidneys were shutting down due to severe dehydration because [he] was never told to drink extra water with the medication [he] was on." He was further told that "because he did not receive the proper treatment, the abscess became staph and the infection entered [his] blood" and that "the infection caused the valves of [his] heart to become inflamed." He was admitted to the hospital, placed on intravenous fluids, and underwent surgery for the abscess. He remained in the hospital for a week.

After he was discharged, plaintiff still had to be transported to the hospital every other day to receive intravenous antibiotics, and he required wound care at the jail. He alleged:

> In 1-8-2021, for 8 PM pill call I told **EMT Jacob that my wound was leaking bad and I needed it to be cleaned**. He said that he just came back after being off for two weeks and didn't know what was going on, and that all he could do is give me a band aid. **He refused to do wound care for me.**[4]

Based on the foregoing, plaintiff claimed:

---

[3] Rec. Doc. 4, p. 6 (emphasis added).
[4] Id. at p. 7 (emphasis added).

2

> Because of the deliberate indifference on multiple occasions by EMT Jacob and the inadequate medical care at the medical department as a whole it put my health and life at risk. It also has shortened my life-span by at least half as it was before. EMT Jacob refused to provide me with the proper medical care which almost caused me to lose my life. Ever since, I have been dealing with chest pains along with tightness in my chest. Because of the actions of EMT Jacob and the medical department at TPCJC they have caused extensive damage to my heart.[5]

## II. Motion to Dismiss

The defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing (1) plaintiff's allegations fail to state a claim against them in their official capacities, (2) they were not deliberately indifferent, and (3) they are protected by qualified immunity.[6] Plaintiff opposed the motion.[7]

Rule 12(b)(6) allows a defendant to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on such a motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). However, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (footnote, citation, and quotation marks omitted).

### A. Official-Capacity/Monell Claims

To the extent that plaintiff has sued Richard Neal and EMT Jacob in their official capacities, those claims are in fact claims against their employer: the Terrebonne Parish Consolidated Government. See Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir.

---

[5] Id. at pp. 7-8.
[6] Rec. Doc. 11.
[7] Rec. Doc. 16.

3

1999) ("Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."); see also Spikes v. Phelps, 131 F. App'x 47, 48 (5th Cir. 2005) ("The liability, if any, flowing from a federal civil rights suit based on official capacity, runs against the local government entity, not the individual defendant."). However, plaintiff has also separately named the Terrebonne Parish Consolidated Government as a defendant in this lawsuit. Because his official-capacity claims are, in reality, against that same entity, they are subject to dismissal as duplicative. See, e.g., Garza v. Escobar, 972 F.3d 721, 734 (5th Cir. 2020); Castro Romero v. Becken, 256 F.3d 349, 355 (5th Cir. 2001); Wilkerson v. Parish of Jefferson, Civ. Action No. 20-3031, 2021 WL 2436355, at *5 (E.D. La. June 14, 2021).

Moreover, any claims asserted against the Terrebonne Parish Consolidated Government must be analyzed under the standards set forth in Monell v. Department of Social Services, 436 U.S. 658 (1978), which provides:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Id. at 694. Therefore, the United States Fifth Circuit Court of Appeals has held:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, **a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted**. To satisfy the cause in fact requirement, **a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom**. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (emphasis added; citations, quotation marks, and brackets omitted). Further, "[a] plaintiff may not infer a

policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).  Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights.  See, e.g., Murray v. Town of Mansura, 76 F. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 F. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3.

In the instant case, plaintiff has not alleged that his constitutional rights were violated as a result of a policy or custom, much less identified such a policy or custom.  Therefore, his allegations fall short of what is required to state a proper claim against the Terrebonne Parish Consolidated Government or against Richard Neal and EMT Jacob in their official capacities.

### B.  Individual-Capacity Claims

### 1.  Richard Neal

Plaintiff has also sued Richard Neal in his individual capacity, but a problem is immediately apparent:  There is not a single allegation concerning Neal included within the statement of plaintiff's claims.  That will not do.  "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation.  This standard requires more than conclusional assertions:  The plaintiff must allege specific facts giving rise to the constitutional claims."  Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Where, as here, a plaintiff has merely listed an individual as a defendant in the complaint but made no factual allegations against him, no cognizable individual-capacity claim has been stated against that defendant.  See, e.g., Hall v. Peck, Civ. Action No. 16-13527, 2017 WL 745729, at *2 (E.D. La. Jan. 12, 2017), adopted, 2017 WL 788354 (E.D. La. Feb. 23, 2017); Reavis v. State of Louisiana, Civ. Action No. 16-1692, 2016 WL 3571440, at *3 (E.D. La. June 8, 2016), adopted,

2016 WL 3524139 (E.D. La. June 28, 2016); White v. Gusman, Civ. Action No. 14-2131, 2014 WL 6065617, at *2 (E.D. La. Nov. 12, 2014).

Out of an abundance of caution, the Court notes that plaintiff did argue in his opposition that Neal is the medical director at the jail and, as such, oversees the training and supervision of the jail's medical personnel. However, even if the Court construes those additional allegations as amendments to the complaint,[8] they still do not suffice to state a claim against Neal for the following reasons.

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Therefore, the mere fact that Neal occupies a supervisory position at the jail does not, in and of itself, serve as a basis for liability. Rather, again, liability can only be based on his personal involvement. See Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) ("In a § 1983 suit ... – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Sanchez v. Young County, 866 F.3d 274, 281 (5th Cir. 2017) ("Supervisors cannot be held liable for constitutional violations committed within the jail if they had no personal involvement.").

Of course, a supervisory official can be held liable for a constitutional violation resulting from his own personal failure to train or supervise his subordinates, and, based on the foregoing statements in his opposition, that appears to be the theory under which plaintiff has sued Neal.

---

[8] The United States Fifth Circuit Court of Appeals has held that, when a district court is considering a motion to dismiss in a case filed by a *pro se* plaintiff, the court must consider the "complaint under the less stringent standards applicable to *pro se* litigants." Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983). In such cases, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." Id. Therefore, a *pro se* litigant's supplemental filings which embellish the original complaint's averments may appropriately be considered when ruling on a motion to dismiss. Id.

However, a claim proceeding under that theory requires that "(1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exist[ed] between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amount[ed] to deliberate indifference." Davidson v. City of Stafford, 848 F.3d 384, 397 (5th Cir. 2017.

Even if plaintiff could meet the first two of those conditions, his claim against Neal would still falter on the third. For deliberate inference to have existed, the defendant must have "disregarded a known or obvious consequence of his action," which "can be demonstrated in two ways." Id. (quotation marks omitted).

"First, a plaintiff may demonstrate that a [defendant] had notice of a pattern of similar violations." Id. That does not apply here, because plaintiff has not alleged there were prior similar incidents, much less that Neal was aware of any such prior incidents.

"Second, a plaintiff may demonstrate liability based on a single incident if the constitutional violation was the highly predictable consequence of a particular failure to train." Id. (quotation marks omitted). That likewise does not aid plaintiff in this case for the following reasons.

The United States Fifth Circuit Court of Appeals initially acknowledged the existence of that "single incident" exception in Brown v. Bryan County, 219 F.3d 450 (5th Cir. 2000). In doing so, the court took care to note that a plaintiff seeking to impose liability under that theory faces a daunting burden: he must be able to show the defendant's "unmistakable culpability and clearly connected causation." Id. at 461.

However, the Fifth Circuit subsequently observed that "[t]he single incident exception … is a narrow one, and one that we have been reluctant to expand." Burge v. St. Tammany Parish,

336 F.3d 363, 373 (5th Cir. 2003).  Moreover, courts have been quick to distinguish <u>Brown</u> by noting that the finding of liability in that case stemmed from the particularly egregious facts involving the use of excessive force by a twenty-one year old, untrained reserve deputy with a history of violent behavior.[9]  Because such egregious facts are not present in most cases, the exception is rarely found to be applicable.  See <u>Littell v. Houston Independent School District</u>, 894 F.3d 616, 627 n.6 (5th Cir. 2018) ("We count only one published 'single incident' failure-to-train case in our circuit in which the plaintiff prevailed.").

Here, plaintiff has not established that the "single incident" exception would apply.  The facts he has alleged, even if true, are not in any way analogous to the egregious facts in <u>Brown</u>.

Accordingly, the motion to dismiss should be granted with respect to the individual-capacity claims against Richard Neal.

---

[9] <u>See, e.g.</u>, <u>Curran v. Aleshire</u>, 67 F. Supp. 3d 741, 759 (E.D. La. 2014) ("[<u>Brown</u>] contains three underpinnings …. First, the court found that the sheriff provided *no* training or supervision (at least not formally) to the offending officer. Second, the court observed the background of the officer at issue, which included the following:  no prior experience or education in law enforcement; twenty-one years of age; arrests for assault and battery, resisting arrest, public drunkenness, driving while intoxicated, possession of false identification, driving with a suspended license, nine moving traffic violations, an outstanding arrest warrant; and, an "excessive number of takedown arrests" in his few weeks on the job similar to but preceding the central incident in that case.  Third, … the court explained why it upheld a finding that the sheriff had notice of the officer's background.  It came to this conclusion on the basis of the family relationship between the sheriff and the officer, the small size of the police department, the arrests that the sheriff had authorized the officer to make, and the sheriff's recent review of the officer's background file made available to him containing the information regarding his arrests." (citations omitted)), <u>appeal dismissed</u>, 800 F.3d 656 (5th Cir. 2015); <u>Williams v. City of Cleveland</u>, Civ. Action No. 2:10cv215, 2012 WL 3614418, at *18 (N.D. Miss. Aug. 21, 2012) ("The Fifth Circuit has considered single violation liability several times, and, with only one exception in some thirty years since <u>Monell</u>, has consistently rejected application of the single incident exception. The sole exception, <u>Brown v. Bryan County</u>, involved a failure to train a neophyte on the constitutional limits to the use of force.  The facts of <u>Brown</u> demonstrate that single violation liability applies **only in extreme circumstances**.  In <u>Brown,</u> the offending officer was the sheriff's nephew who had been on the job for only a few weeks and had no education or experience whatsoever in law enforcement.  Moreover, shortly before joining the sheriff's office, he had been arrested for several crimes, including assault and battery." (emphasis added; citations omitted)), <u>aff'd</u>, 736 F.3d 684 (5th Cir. 2013); <u>Burrell v. Adkins</u>, Civ. Action No. 3:01CV2679, 2008 WL 130789, at *2 (W.D. La. Jan. 10, 2008) ("The facts of <u>Brown</u> are illuminating.  There, the direct offender was a reserve officer (not a full-fledged deputy) who had been hired with *no* experience and *no* training and who had already demonstrated a propensity for unnecessarily rough treatment of arrestees over just a few weeks on the job.").

## 2. EMT Jacob

The individual-capacity claims against EMT Jacob ("Jacob"), however, are a different matter. Clearly, Jacob is the primary defendant herein, and plaintiff's complaint is replete with allegations that his requests for medical assistance were repeatedly ignored by Jacob. Therefore, the claims against Jacob warrant a closer look, but that closer look is made more challenging by virtue of the fact that he has invoked a formidable defense: qualified immunity.

Qualified immunity is said to provide "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Regarding the defense, the United States Fifth Circuit Court of Appeals recently explained:

> The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. There are two aspects to qualified immunity: whether the plaintiff has alleged a violation of a constitutional right and whether the right at issue was "clearly established" at the time of the alleged violation.

Cope v. Cogdill, 3 F.4th 198, 204-05 (5th Cir. 2021) (citations and quotation marks omitted).

Where, as here, a defendant has asserted qualified immunity in a motion to dismiss, "[t]he crucial question is whether the complaint pleads facts that, if true, would permit the inference that [defendant is] liable under § 1983 and would overcome [his] qualified immunity defense. It is the plaintiff's burden to demonstrate that qualified immunity is inappropriate." Terwilliger v. Reyna, 4 F.4th 270, 280 (5th Cir. 2021) (citation, quotation marks, and ellipsis omitted).

For the following reasons, the undersigned finds that the first prong of the qualified immunity analysis poses no real obstacle for plaintiff with respect to his claim against Jacob.

As noted, plaintiff is a pretrial detainee,[10] and it is clear that "[t]he Fourteenth Amendment guarantees pretrial detainees a right not to have their serious medical needs met with deliberate

---

[10] Rec. Doc. 4, p. 3.

9

indifference on the part of the confining officials." Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020) (quotation marks omitted). Although the instant motion does not contest that plaintiff's infection rose to the level of a serious medical need,[11] it strenuously argues that there was no deliberate indifference. However, the Court finds that deliberate indifference has been adequately alleged to survive a Rule 12(b)(6) motion to dismiss.

It is true that "[d]eliberate indifference is an extremely high standard to meet." Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, where, as here, a plaintiff is complaining about a delay in medical treatment, he also "must show deliberate indifference to serious medical needs that resulted in substantial harm." Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 422 (5th Cir. 2017). However:

> A plaintiff can show deliberate indifference by showing that an official **refused to treat him, ignored his complaints**, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. **The pain suffered during a delay in treatment can constitute a substantial harm** and form the basis for an award of damages.

Id. (emphasis added; citation and quotation marks omitted).

In the instant case, plaintiff has unequivocally alleged that it was evident that his conditioning was worsening: his abscess was growing, and he was experiencing fever, chills, and a loss of motor functions. Nevertheless, despite that, Jacob continued to ignore plaintiff's repeated requests for medical attention, **ignoring** his complaints and **refusing** to provide him with (or to seek for him) medical attention. Plaintiff has further alleged that, due to the resulting delays in receiving medical attention, he suffered pain (including chest pains, which were particularly alarming given his previous triple-bypass heart surgery) and developed a staph infection which damaged his heart. Based on those alleged facts, which must be accepted as true for the purposes

---

[11] "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

of a motion to dismiss, a trier of fact could find that Jacob's inaction constituted deliberate indifference and that the delays caused by his inaction caused plaintiff substantial harm. The Court therefore finds that plaintiff has sufficiently alleged a violation of his Fourteenth Amendment right to medical care, so as to overcome the first prong of the qualified immunity analysis.

At the second prong, the plaintiff must establish that the right at issue was "clearly established." On that second prong, "[t]he critical consideration is '**fair warning**': the specific right must have been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct." Trevino v. Hinz, 751 F. App'x 551, 554 (5th Cir. 2018) (emphasis added; quotation marks omitted). In other words, "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 577 U.S. 7, 11-12 (2015) (quotation marks omitted). Under that standard, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quotation marks omitted). **But**, that does "not require a case directly on point." Id. (quotation marks omitted); accord Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. **This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful**; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." (emphasis added; citation omitted)). On that point, it bears repeating: the touchstone is "fair warning," and such warning can exist even where it must be gleaned from cases that are not factually identical to the case at hand. See, e.g., Terwilliger v. Reyna, 4 F.4th 270, 284 (5th Cir. 2021) ("[T]he 'clearly established' prong can be satisfied despite notable factual distinctions between the precedents

relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." (quotation marks omitted)).

Here, "fair warning" existed. It has long been "clearly established" law that an inmate can demonstrate a constitutional violation by showing that a penal official evinced a wanton disregard for the inmate's serious medical needs by **refusing to treat the inmate or ignoring his complaints**. See, e.g., Easter v. Powell, 467 F.3d 459, 465 (5th Cir. 2006). And, again, that is precisely what plaintiff alleges happened here. Specifically, he alleges that, even though his condition visibly continued to worsen, Jacob ignored his repeated pleas for assistance. Jacob did not assess plaintiff.[12] He did not offer any aid himself. He did not relay plaintiff's complaints up the chain of command. He did not even notify those who prescribed the existing treatments that the treatments not only were failing to provide relief but, worse, they were not halting plaintiff's serious slide toward a possibly life-threatening condition. Instead, Jacob allegedly simply walked away and did – in a word – nothing.

Because Jacob has filed a motion to dismiss, those well-pleaded facts must, for now, be accepted as true and viewed in the light most favorable to the plaintiff. When doing so, this Court has no hesitation in concluding that a reasonable EMT in Jacob's position would have understood that, at a minimum, the failure to advise his superiors in the medical department of plaintiff's deteriorating condition violated his clearly established constitutional rights[13] and that such an officer was on "fair warning" of that principle.

---

[12] See, e.g., Sanchez v. Oliver, 995 F.3d 461, 474 (5th Cir. 2021) (noting that a failure to assess an inmate "in any meaningful way" can rise to the level of deliberate indifference).
[13] See, e.g., Dauzat v. Carter, 670 F. App'x 297, 298 (5th Cir. 2016) (finding that the failure to refer an inmate with obvious serious medical needs to a physician was unreasonable).

That, of course, does not necessarily end the matter because Jacob may reassert his qualified immunity defense again as this case progresses.[14] And as the record is developed and **actual evidence** is presented concerning what Jacob did (or failed to do), and as the standards of review grow increasingly stringent, it may prove more difficult for plaintiff to defeat a qualified immunity defense at successive stages of the litigation. But that is for another day. For now, at least, his individual-capacity claim against Jacob should survive the motion to dismiss.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the defendants' motion to dismiss, Rec. Doc. 11, be **DENIED IN PART AND GRANTED IN PART**.

It is **RECOMMENDED** that the motion be **DENIED** with respect to the individual-capacity claims asserted against EMT Jacob and that those claims remain referred to the undersigned United States Magistrate Judge and be allowed to proceed pending further development.

It is **RECOMMENDED** that the motion be **GRANTED** in all other respects and that all other claims asserted by plaintiff be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

---

[14] "[An] official can raise qualified immunity at any stage in the litigation – from Rule 12(b)(6) motions to dismiss, to Rule 12(c) motions for judgment on the pleadings, to Rule 56 motions for summary judgment, to Rule 50(b) post-verdict motions for judgment as a matter of law – and continue to raise it at each successive stage." State ex rel. Estate of Joseph v. Bartlett, 981 F.3d 319, 330-31 (5th Cir. 2020)

result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

    New Orleans, Louisiana, this   8th   day of October, 2021.

                                  *Janis Van Meerveld*
                              **JANIS VAN MEERVELD**
                              **UNITED STATES MAGISTRATE JUDGE**